**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**FARMERS & MERCHANTS STATE BANK,**

      **Appellant/Petitioning Creditor,**

**v.**                           **Case No. 3:13cv498/MCR/CJK**
                                       **[Bankruptcy Case No. 12-31211-KKS]**

**DOUGLAS E. TURNER,**

      **Appellee/Alleged Debtor**.

_____/

**ORDER**

Farmers & Merchants State Bank ("the Bank") appeals an order of dismissal of this involuntary Chapter 7 bankruptcy proceeding against the alleged debtor, Douglas E. Turner ("Turner"), filed in the United States Bankruptcy Court for the Northern District of Florida. *See In re Douglas E. Turner*, Bankruptcy Case No. 12-31211-KKS.  The matter has been fully briefed and is ripe for a decision.[1]  Also pending is Turner's motion to strike certain portions of the Bank's brief and reply brief.  Now, having fully reviewed the record and the arguments of the parties, the Court finds that the Bankruptcy Court's ruling is due to be affirmed.

**Background**

    A.    **Bankruptcy Court Proceedings**

On August 31, 2012, the Bank and two other creditors, Tema Burk, TTE, Tema Burk Revocable Intervivos Trust ("Burk") and Susan C. Smith ("Smith"), commenced an involuntary Chapter 7 proceeding against Turner, alleging claims in the aggregate amount of $3,578,682.44 based on state court judgments in their favor against Turner.  *See*

---

[1]  The Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a).  The Court has determined after examination of the well-drafted briefs and the record that oral argument is not needed because "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument."  Bankruptcy Rule 8012.

11 U.S.C. § 303(b)(1) (2012) (stating an involuntary bankruptcy proceeding must be initiated on the petition of three or more creditors, each of which must have a claim that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, and the noncontingent, undisputed claims must total at least $14,425 more than the value of any lien on property securing the claims).  Turner moved to dismiss the Chapter 7 proceeding for failure to state a claim, arguing that the Bank, Burk and Smith are not eligible creditors to initiate the petition because they asserted the same claims in a previous Chapter 11 bankruptcy proceeding of Turner Heritage Homes, Inc. ("Turner Heritage Homes"), and the claims were satisfied, in whole or in part, through the Amended Reorganization Plan ("the Reorganization Plan" or "Plan") in that proceeding.[2]  *See In re: Turner Heritage Homes, Inc., Debtor*, Bankruptcy Case No. 11-40517-LMK.   The Bankruptcy Court held an evidentiary hearing on the motion to dismiss, and the record shows the following.[3]

The claimed debts are the result of final judgments entered against Turner personally based on his guarantees of loans executed on behalf of Summerchase, LLC ("Summerchase") and Heritage Hills Development Company, LLC ("Heritage Hills"), while he was a managing member of these companies.  Neither company is still in existence. In April and May 2011, the companies merged into Turner Heritage Homes, which acquired all of their assets and existing liabilities and then filed for Chapter 11 bankruptcy in June 2011.  The Reorganization Plan was filed on November 7, 2011, and confirmed on March 26, 2012.[4]  In the time between these dates, the Bank, Smith and Burk obtained personal judgments against Turner on his guarantees in the amounts of $3,489,142.39 in favor of the Bank; $38,901.29 in favor of Burk; and $50,683.76 in favor of Smith, each of which

---

[2] *See* Doc. 2-5.

[3] The Bank was the only one of the three petitioning creditors to participate in the hearing.

[4] The confirmation order states that the Plan binds the debtor and creditors, whether or not the creditor is impaired under the Plan, but that "[c]onfirmation of the [Reorganization] Plan shall not operate as *res judicata* with respect to the effect of the merger of Heritage Hills Development Company, LLC on the individual members of Heritage Hills Development Company, LLC."

became final prior to confirmation of the Reorganization Plan.[5]

Turner testified at the hearing on the motion to dismiss.  He acknowledged executing promissory notes to the petitioning creditors–the Bank, Burk and Smith–as a managing member of Summerchase and Heritage Hills and that he had signed personal guarantees as well.  Although Turner maintained he only guaranteed 25% of the indebtedness to the Bank, he  admitted a default judgment was entered against him for the entire amount when he failed to defend.  The judgments in favor of Burk and Smith arose out of separately filed cases against Turner, Summerchase, and Fred Turner, and those judgments were entered with Turner's consent.  Turner testified that in none of those cases did he raise any objection based on the then-pending Turner Heritage Homes Chapter 11 proceeding, nor did he seek to stay the judgments at any time.  He testified that all three petitioning creditors here had participated in the Chapter 11 proceedings, and they each received stock in the newly formed entity, Phoenix Realty Partners, Inc. ("Phoenix"), which emerged out of the Chapter 11 proceedings as a growing business.  Turner testified he has more than twelve unsecured creditors and was not making payments to any of them as of August 31, 2012, when the Chapter 7 proceeding was filed, explaining his belief that "[t]hey received stock in Phoenix Realty Partners as payment in full."[6]  (Doc. 6, at 17).

Louis Weltman, an officer of Turner Heritage Homes, also testified at the evidentiary hearing.  He testified regarding his assistance with the reorganization and confirmed that all creditors participating in the Plan received stock in Phoenix.  Weltman explained the terms of the Reorganization Plan, under which the Bank was a Class 4 secured creditor

---

[5]  The involuntary petition appears to have inverted two numbers in the Smith judgment, claiming Turner owed Smith the amount of $50,638.76, which is incorrect.  (*See* doc. 3-12).

[6]  Also during the hearing, the Bank attempted to elicit testimony from Turner about a foreign trust he had created and into which he had allegedly transferred property, either before or during Turner Heritage Homes's bankruptcy proceeding.  At page 20 of the transcript, the Bankruptcy Judge sustained an objection to this testimony as outside the scope of direct, and no further evidence was admitted on the subject.  During closing argument, Turner's lawyer argued that any reference to a trust in another country is irrelevant to the motion to dismiss.

given certain elections, one of which was to have its secured property returned.[7]  The Bank elected to have its secured real property returned to it, and, according to Weltman, the parties stipulated that the property would be valued as worth $1,100,000 for purposes of the Plan.  The Class 4 section of the Plan also provides, "[t]he original shareholders shall continue to personally guarantee, on a limited basis, the performance by the Debtor."[8]  The remainder of the Bank's claim, to the extent there was a deficiency beyond the value of the property, became part of Class 10 under the Plan, which addressed deficiency claims.[9]  Creditors in this class received common stock of Phoenix aggregating a 5% equity stake in Phoenix to be shared proportionately by the Class 10 creditors.  The Bank did not object to this treatment under the Plan.

Weltman also testified that Burk and Smith participated in the Chapter 11 proceedings as Class 12 friends and family creditors, who similarly received proportionate shares of common stock in Phoenix aggregating a 5% equity stake.[10]  Weltman discussed the plain language of Section 2.16 of the Plan, titled "Satisfaction of Claims," which provided that the treatment of claims under Article 2 (which lists all classes of claims) was in "full satisfaction, release, and discharge" of claims against the Chapter 11 debtor and estate.  Also, Weltman confirmed that Section 4.13 under Article 4 of the Plan[11] deals with distributions in "complete satisfaction and release" of "all claims against and interest in the debtor's estate" and property.[12]  (Doc. 6, at 38).  The Plan further provided as the "Effect

---

[7]  The Plan also states "Class 4 is impaired."

[8]  There is no dispute that Turner Heritage Homes fulfilled its performance by returning the real property.  The parties agree that the Bank received the property.

[9]  The Plan states "Class 10 claims are impaired."

[10]  The Plan states "Class 12 claims are impaired."

[11]  Article 4 is titled "Unclassified Claims and Disputed Claims and Distributions."

[12]  In relevant part, the Plan states: "The distributions and rights provided under this Plan will be in complete satisfaction and release, effective as of the Effective Date, of all Claims against and Interests in the Debtor's Estate and all liens upon any Property of the Estate."  (Doc. 2-5, Section 4:13).

of Confirmation" that all of the provisions of the Plan would be binding on the debtor, its estate, all creditors, and "all other entities who are affected (or whose interests are affected) in any manner by the Plan." (Doc. 2-5, Section 5.01).  According to Weltman, the language provided for full satisfaction of claims against the debtor, stating, "[t]hat was what the purpose of the plan was."  Weltman also testified that Phoenix is a viable company with value and numerous clients.  He stated that no creditor had asked him to place a value on the Phoenix stock but also testified, "I believe it has value, yes."  (Doc. 6, at 40).

At the close of the hearing, Turner argued for dismissal on grounds that, in light of the terms of the Reorganization Plan, the petitioning creditors in this case have been satisfied in full because the claims were released in the Chapter 11 proceeding, or alternatively, they have been satisfied at least in part, and, therefore, a bona fide dispute exists regarding the amount of the claims.  Turner argued that, based on the Plan, the Bank's claim is at least $1,100,000 less than claimed in the petition and must also be reduced by the value of the shares of stock received.  By contrast, the Bank argued that the claims were satisfied only as against the Chapter 11 debtor and did not release or satisfy individual claims against Turner for the deficiency based on judgments against him. The Bank also argued it satisfied its burden to show there is no bona fide dispute as to the amount of the debts because the final judgments far exceed the statutory threshold, and Turner offered no evidence valuing the stock.

The Bankruptcy Court requested supplemental briefing on the issue of whether a final judgment that has not been stayed or appealed may nevertheless be subject to a bona fide dispute under 11 U.S.C. § 303 based on a showing that a third party has partially or totally satisfied the underlying debt.  In its final decision, the Bankruptcy Court determined that a final judgment can be subject to a bona fide dispute and granted the motion to dismiss.  Specifically, the Bankruptcy Court found that all three petitioning creditors have claims that have been reduced to a final judgment, establishing a *prima facie* case that there is no bona fide dispute; unrefuted testimony and evidence showed that the underlying claims of Burk and Smith were completely satisfied by distributions of

shares of common stock under the Reorganization Plan; and, as to the Bank's claim, the Bankruptcy Court found that although there is no bona fide dispute as to liability, Turner established a bona fide dispute as to amount. The Bankruptcy Court found that no evidence had been presented as to the value of the property transferred to the Bank under the Plan, and there was no evidence that the Bank gave Turner any credit against the judgment for the value of the property deeded to it or for the value of the stock transferred to the Bank for the deficiency, though part of the judgment had been paid. The Bankruptcy Court concluded: "Here the Court can't tell if the claim of the bank has been fully or partially satisfied under the terms of the Turner Heritage Home, Chapter 11 case. Either way, there's clearly a bona fide dispute as to the amount of the bank's claim against Mr. Turner." The Bankruptcy Court therefore dismissed the petition.

B.   **Arguments on Appeal**

This appeal by the Bank followed. The Bank argues that the Bankruptcy Court incorrectly interpreted the Chapter 11 Reorganization Plan and confirmation order; made clearly erroneous findings of fact that the Burk and Smith judgments were satisfied and that there was no evidence of the value of the real property; and incorrectly failed to shift the burden to Turner, as the alleged debtor, to establish a bona fide dispute. The Bank also argues that the Bankruptcy Court erred in finding a bona fide dispute in amount without proof that the disputed portion is sufficient to bring into question whether the statutory threshold is met. Finally, the Bank argues alternatively that the Bankruptcy Court erred by failing to find that the Bank could proceed as the sole petitioning creditor due to special circumstances of fraud related to Turner's transfer of money to a foreign trust.

Turner argues that the Bankruptcy Court's dismissal should be affirmed on grounds that there is at least a bona fide dispute regarding the amount of the claim as to all three judgments and maintains the fact findings were not clearly erroneous. Turner maintains that a majority of courts to consider the issue have determined that a dispute as to any amount of the claim is sufficient to render a petitioning creditor ineligible to bring an involuntary Chapter 7 proceeding. Additionally, Turner filed a motion to strike the

references to fraud in the Bank's brief and reply brief because the issue was neither presented to, nor addressed by, the Bankruptcy Court.

C. **Standards of Review**

In deciding a bankruptcy appeal, the district court applies the same standards as a court of appeals, reviewing the legal conclusions of the bankruptcy court *de novo* and its findings of fact for clear error. *See In re Optical Techs., Inc.*, 425 F.3d 1294, 1299-1300 (11th Cir. 2005); *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993); *see also* Bankruptcy Rule 8013. In considering a bankruptcy court's interpretation of the effect of its own prior order, courts in the Eleventh Circuit apply a deferential standard and will not disturb the bankruptcy court's interpretation "unless it clearly abused its discretion."[13] *In re Optical Techs.*, 425 F.3d at 1300. This standard, however, does not alter the district court's obligation to apply *de novo* review to questions of law. *Id.* at 1302.

**Discussion**

In relevant part, the Bankruptcy Code provides that an involuntary bankruptcy case may be commenced on petition of three or more creditors, each of which must have a claim[14] that is "not contingent as to liability or the subject of a bona fide dispute as to liability or amount,"[15] and the claims in the aggregate must total at least $14,425[16] more than the value of any lien on property securing such claims. *See* 11 U.S.C. § 303(b)(1)

---

[13] The Bank urges the Court not to apply this deferential standard to the Bankruptcy Judge's interpretation of the Turner Heritage Home Reorganization Plan because she was not the judge who confirmed the Plan. Each judge's ruling speaks for the Bankruptcy Court of the Northern District of Florida, however, and thus due deference will be given to their interpretation of the court's own prior orders whenever appropriate, but not to issues of law.

[14] A "claim" is defined in part as a "right to payment, whether or not such right is reduced to judgment." 11 U.S.C. § 101(5)(A).

[15] The phrase, "as to liability or amount," was added by the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), Pub. L. No. 109-8, §§ 1234(a)(1)(A) & (a)(12), 119 Stat. 23 (Apr. 20, 2005). As discussed further below, there is some dispute among courts as to how this additional language has altered the analysis.

[16] The dollar amount is adjusted every three years and changed to $15,325 in 2013. *See* 11 U.S.C. § 303 (fn. 1). The Court will refer to the statutory amount in effect at the time the involuntary petition was filed in 2012.

(2012);[17] *see also In re Trusted Net Media Holdings, Inc.*, 550 F.3d 1035, 1043-46 (11th Cir. 2008) (*en banc*) (determining that the requirements of § 303(b) are not jurisdictional but establish statutory conditions for commencing a proceeding, which may be waived). Read as a whole, § 303 establishes a five part test for a contested involuntary petition:

> (1) the petitioning claimholders' claims are not contingent as to liability,
> (2) the claims are not subject to a bona fide dispute as to liability or amount,
> (3) the value of such claims total in the aggregate at least [the statutory threshold amount];
> (4) three or more entities commenced the involuntary petition; and
> (5) the alleged debtor is generally not paying its debts as they come due.

*In re Flamingo Enterprises, Inc.*, 2009 WL 1730960, at *4 (Bankr. S.D. Fla. 2009) (footnote omitted) (citing *In re Euro–American Lodging Corp.*, 357 B.R. 700, 712 (Bankr. S.D.N.Y. 2007)). There is no dispute on the record in this appeal as to elements (1), (4) and (5); the issues on appeal instead concern elements (2) and (3)–that is, whether there is a bona fide dispute as to liability or amount for each of the three petitioning creditors and whether the total of the undisputed claims aggregates at least the statutory threshold amount.

On a motion to dismiss an involuntary petition, the petitioning creditor bears the burden to demonstrate a *prima facie* case that its claim is not subject to a bona fide dispute. *See In re Bimini Island Air, Inc.*, 370 B.R. 408, 413 (S.D. Fla. 2007); *In re Biogenetic Techs., Inc.*, 248 B.R. 852, 856 (Bankr. M.D. Fla. 1999) (stating involuntary bankruptcy "is a severe remedy and Congress prefers that creditors settle their disputes without resorting to the involuntary bankruptcy procedure"). If a *prima facie* undisputed claim is shown, the burden then shifts to the alleged debtor to come forward with evidence of a bona fide dispute as to liability or amount. *See In re Biogenetic Techs.*, 248 B.R. at 856; *see also In re Axl Indus., Inc.*, 127 B.R. 482, 485 (S.D. Fla. 1991). The Bankruptcy Code does not define the phrase "bona fide dispute," *see Busick*, 831 F.2d at 749, but a majority of courts, including bankruptcy courts in Florida, apply an objective standard. *See*

---

[17] Additionally, this provision applies where the alleged debtor has twelve or more creditors at the time. Turner's undisputed testimony established that he had more than twelve creditors. Also, in an involuntary bankruptcy case, the petitioning creditors must prove that the alleged debtor is generally not paying his debts as they become due. 11 U.S.C. § 303(h)(1). Turner admitted this as well.

*In re Huggins*, 380 B.R. 75, 82 (Bank. M.D. Fla. 2007) (collecting cases); *see also* 2 Collier on Bankruptcy ¶ 303.11[1] (16th ed.) (noting the Second, Third, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits, as well as bankruptcy courts in the First and Eleventh Circuits, have adopted an objective standard).   Under this standard, a bona fide dispute exists and requires dismissal of the creditors' petition "if there is either a genuine issue of material fact that bears upon the debtor's liability [or amount], or a meritorious contention as to the application of law to undisputed facts."  *In re Axl Indus., Inc.*, 127 B.R. at 485*; see also In re Rosenberg*, 414 B.R. 826, 845 (Bankr. S.D. Fla. 2009).   In other words, "if there are substantial legal or factual questions raised by the debtor, the debtor can preclude the creditor from being an eligible petitioning creditor."  2 Collier on Bankruptcy ¶ 303.11[1]. "'Congress has made clear that it intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal.'"  *In re Taub*, 439 B.R. 261, 273 (E.D.N.Y. 2010) (quoting *In re DSC, Ltd.*, 486 F.3d 940, 945 (6th Cir. 2007)).   Courts do not resolve the outcome of an identified bona fide dispute on a motion to dismiss but engage only in "a limited analysis of the claims" to determine the "presence or absence" of a bona fide dispute.  *In re Manhattan Indus., Inc.*, 224 B.R. 195, 199 (Bankr. M.D. Fla. 1997); *In re Downie*, 110 B.R. 62, 63 (Bankr. N.D. Fla. 1989); *see also Matter of Busick*, 831 F.2d 745, 750 (7th Cir. 1987).

Generally, when a petitioning creditor's claim is based on "an unappealed, unstayed judgment," the claim is not subject to a bona fide dispute.  *In re Biogenetic Techs.*, 248 B.R. at 856 (citing *In re Manhattan Indus.*, 224 B.R. at 200).  But this rule is not absolute, and courts have found a bona fide dispute in certain situations where the claim was based on a judgment that was incorrect or partially satisfied.  *See, e.g., In re Byrd*, 357 F.3d 433, 439 (4th Cir. 2004) (stating once the creditor met its *prima facie* case "by presenting unstayed state court judgments in its favor, the burden shifted to [the alleged debtor] to demonstrate the existence of a bona fide dispute"); *In re Prisuta*, 121 B.R. 474, 476 (W.D. Pa. 1990) (finding a genuine issue of fact on evidence that the judgment may have been

satisfied);[18] *In re Rosenberg*, 414 B.R. at 847-48 (finding material questions of fact, and thus a bona fide dispute, regarding the validity and/or amount of an alleged debt even after entry of a "Confession of Judgment" where the petitioning creditor admitted the amount due had been overstated).  The facts of each case must be taken into consideration, mindful that bankruptcy is to "serve as a shield for debtors, not as a sword for creditors." *In re Prisuta*, 121 B.R. at 476; *see also In re Byrd*, 357 F.3d at 438 (recognizing "the purpose of the 'bona fide dispute' provision is to prevent creditors from using involuntary bankruptcy 'to coerce a debtor to satisfy a judgment even when substantial questions may remain concerning the liability of the debtor'" (quoting *Prisuta*, 121 B.R. at 476)).

The Bank asserts that the Bankruptcy Court erred in finding the Bank's judgment against Turner subject to a bone fide dispute and erred in applying the law on that issue. More specifically, the Bank first argues that the Bankruptcy Court failed to properly shift the burden to require Turner to show the actual value of any disputed portion of the judgment by expert testimony or otherwise.  The Court disagrees.  Regardless of any shifting of burdens, the statute requires the petitioning creditor to proceed on a noncontingent, undisputed claim.  *See* 11 U.S.C. § 303(b).  The record reflects that the Bankruptcy Court considered the Bank to have made a *prima facie* showing based on the final, unstayed judgment and then looked to Turner's evidence to determine whether there was a bona fide dispute as to amount.[19]  The Bankruptcy Court found that through the Chapter 11 Plan

---

[18] In *Prisuta*, the Western District of Pennsylvania framed the issue in that case as follows: "Alleged debtors do not dispute that at least three creditors hold claims against them or that said claims aggregate at least $5,000.00 more than the value of any liens on alleged debtors' property which secure such claims. The sole issue presented in this case is whether petitioners' claims are subject to bona fide dispute for purposes of § 303 of the Bankruptcy Code." 121 B.R. at 475. Recognizing that a final judgment is not generally subject to a bona fide dispute as to liability, the district court nonetheless found material disputes of fact because the alleged debtors were only secondarily liable as guarantors and there was a genuine issue as to whether the petitioning creditors' claims had already been satisfied.  *Id.* at 477 (the alleged debtors had consented to judgment as guarantors because it appeared the primary obligor would generate sufficient revenue through completion of unfinished jobs to satisfy the obligation, but they had alleged that the petitioning creditors tortiously interfered with completion of the jobs and also had seized materials, raising genuine issues of fact that, if true, showed that the liability to these petitioning creditors "arguably may be satisfied").

[19] The Bankruptcy Court found no dispute as to liability.

and testimony at the hearing, Turner had shown that the value of the property and stock distributed under the Reorganization Plan must be credited against the judgment.  The Bankruptcy Court noted that the Bank's claim was based on the full amount of the judgment, with no credit having been given for the property or the stock, and thus there was a bona fide dispute as to amount because it could not tell whether the Bank's claim had been paid in full or in part.  The Bank never put forward an undisputed amount it claimed was due.  The Court finds that the Bankruptcy Court did not err in shifting the burden and instead correctly found a bona fide dispute as to amount based on Turner's evidence.[20]  On this record, where Turner has established that substantial credits must be given against the judgment based on the value of the property and the stock, the fact that Turner did not prove the exact valuation of the stock does not preclude a finding that a bona fide dispute exists.  The Bankruptcy Court was not required to resolve the dispute but only identify whether or not a bona fide dispute was present.[21]  *See In re Manhattan Indus., Inc.*, 224 B.R. at 199.  Granted, this case does not fit neatly within the traditional analysis because the prior Chapter 11 proceeding undoubtedly impacted the amount of the Bank's judgment against Turner; however, because the record shows the Bank proceeded on a judgment it knew had been partially satisfied without identifying the deficiency as its undisputed claim, the Bank cannot now complain about Turner's failure to identify the amount of the dispute or the Bankruptcy Court's inability to find a claim not subject to a

---

[20]  The Court rejects the Bank's argument that the Bankruptcy Court was clearly erroneous in finding that it did not present evidence as to the value of the property transferred to the Bank to be credited against its judgment.  The Bank did not argue to the Bankruptcy Court that the $1,100,000 property value should be credited against the judgment nor did it present any evidence in this case showing that the Bank has given credit against Turner's judgment for the property or the stock in any amount so as to identify an undisputed portion of the judgment.  Although the Reorganization Plan stated an agreed valuation of $1,100,000 for the real property, the Bank did not offer this as part of its *prima facie* showing or assert that the judgment must be reduced by this amount; instead, the Bank relied solely on the face amount of the judgment and expected Turner to establish the undisputed claim by placing a value on the dispute.  The Court finds this position contrary to the statute's requirement that the petitioning creditor identify and proceed on an undisputed claim.

[21]  The Bank also criticizes the Bankruptcy Court's reliance on *In re Prisuta*, 121 B.R. 474 (Bankr. W.D. Pa. 1990), to find that a final, unstayed judgment can be the subject of a bona fide dispute.  The Court agrees with the Bankruptcy Court, and notes also that the *Prisuta* case is bolstered by the 2005 amendments to the Bankruptcy Code, which expressly states that there can be a bona fide dispute as to liability *or amount*.

bona fide dispute.

For the same reason, the Court disagrees with the Bank's argument that the Bankruptcy Court erred by not requiring Turner to demonstrate a bona fide dispute in an amount sufficient to call into question whether the aggregate claims met the statutory threshold.  Appearing now to concede a dispute as to amount in excess of one million dollars, the Bank argues that it was not enough for Turner to simply show a dispute but rather, according to the Bank, he had to show a dispute of an amount sufficient to bring the claims below the statutory threshold.  This precise argument was not made to the Bankruptcy Court, most likely because the Bank relied on the full face value of its judgment, failing to acknowledge that *any* credits were due.  Because the Bankruptcy Court was not given the opportunity to address this specific argument, this Court need not consider it.  *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331-32 (11th Cir. 2004).  However, because of the attention paid to the issue in the parties' briefs and its novelty under the law, the Court finds it appropriate to discuss it.

There are conflicting court decisions regarding whether *any* dispute of amount creates a bona fide dispute for purposes of § 303(b)(1) or whether the debtor must show a dispute that implicates the statutory threshold.  An amendment to the Bankruptcy Code in 2005 added the language "as to liability or amount" after "bona fide dispute."[22] 11 U.S.C. § 303(b)(1).  Before 2005, courts interpreted the statutory "bona fide dispute" language as only applicable to a dispute over liability, and a dispute as to the amount of the claim alone would not render a petitioning creditor ineligible.  *See In re Green Hills Dev. Co.*, 741 F.3d 651, 656-57 (5th Cir. 2014) (stating prior to the 2005 amendment, a dispute as to amount, even as to the total amount of the claim through an offsetting counterclaim was not considered a basis to find a creditor ineligible); *see also In re Biogenetic Techs.*, 248 B.R. at 857 (stating, prior to the 2005 amendment, that a counterclaim was not a bona fide

---

[22]  The "bona fide dispute" language was added by a 1984 amendment, and courts have found that this reflected a policy that "disputed debts and creditors with disputed claims are to be excluded" so debtors will not be dragged "into the stigma of an involuntary bankruptcy, when in fact the claim is subject to a valid, legitimate dispute."  *In re Hope Commc'ns., Inc.*, 59 B.R. 939, 943 (Bankr. W.D. La. 1986).

dispute because it may reduce the amount but did not dispute the merits of the original claim).  After the amendment adding "liability or amount," the majority of courts that have addressed the issue, or commented on it, have concluded that the 2005 amendment changed the analysis such that now *any* dispute as to amount (whether implicating the statutory threshold or not) renders a creditor ineligible.[23]  *See* 2 Collier on Bankruptcy ¶ 303.11[2]; *see also In re Rosenberg*, 414 B.R. at 846 ("As a result of the [2005] amendment, any dispute regarding the amount of the petitioning creditors' claims that arises from the same transaction and is part of the underlying claim renders the claim subject to a bona fide dispute.").  This interpretation appears consistent with the plain language of the statute and Congress's intent to disqualify a creditor whose claim is subject to dispute from using an involuntary petition "as a club to coerce the debtor" to satisfy a judgment when substantial questions may remain as to liability *or amount*.[24]  *See In re Rosenberg*, 414 B.R. at 845-46.  However, other courts, representing a minority view, have concluded that this amendment did not change the statutory analysis, but was merely clarifying,[25] and thus the disputed amount must also implicate the statutory threshold to be

---

[23]  Collier cites several cases.  *See, e.g., In re Bimini Island Air*, 370 B.R. 408 (Bankr. S.D. Fla. 2007) (opining in a case filed before the 2005 amendments were enacted that under the amendments, "bona fide dispute" is characterized in a new way making "a dispute as to the amount of the debt claimed apparently sufficient to render a petitioning creditor ineligible"); *In re Regional Anesthesia Associates PC*, 360 B.R. 466, 470 (Bankr. W.D. Pa. 2007) (finding the amendment to mean that any dispute regarding the amount that arises from the same transaction and is directly related to the underlying claim renders the claim subject to a bona fide dispute).  Also, the Fifth Circuit, considering the 2005 amendment to § 303(b)(1), has recently viewed the amendment as reflecting a change in the statute's meaning such that "a bona fide dispute as to the amount of the debt is now sufficient" to find a creditor ineligible.  *In re Green Hills Dev.*, 741 F.3d at 656-57; *see also In re Vicor Techs., Inc.*, 2013 WL 1397460, at *5 (S.D. Fla. 2013) (stating it is "generally accepted" that the amendment changed the analysis so a dispute as to any portion of a claim is a bone fide dispute, "even if some dollar amount would be left undisputed").

[24]  Relevant legislative history states that the amendment is intended "'to specify that a creditor would be ineligible to file an involuntary petition if the creditor's claim was the subject of a bona fide dispute as to liability or amount.  It further provides that the claims needed to meet the monetary threshold must be undisputed.'"  H.R. Rep. 109-31(I), 2005 U.S.C.C.A.N. 88, at 149, *quoted in In re Rosenberg*, 414 B.R. at 845.

[25]  One bankruptcy court has commented that the amendment was clarifying in that it potentially expanded the disputes that can disqualify a creditor:  "[The amendment] did something. It has some significance.  It appears to this court that the amendment at least clarified, and perhaps even expanded the universe of when is there a bona fide dispute with regard to a claim.  Now, it is clear that a claim is the subject

considered a relevant bona fide dispute, citing *In re DemirCo Holdings, Inc.*, 2006 WL 1663237, at *3 (Bank. C.D. Ill. 2006) ("For a bona fide dispute to be relevant, it must at least have the potential to reduce the total of petitioners' claims to an amount below the statutory threshold."), a case on which the Bank relies.   2 Collier on Bankruptcy ¶ 303.11[2].

The debate is interesting but not one this Court needs to weigh in on for purposes of this case.  Again, this argument was not raised below.  Moreover, this whole discussion turns on facts not present on this record.  Here, the Bank proceeded on a judgment it knew was at least partially disputed in some unknown amount in excess of one million dollars, as reflected by its participation in the Chapter 11 proceeding and its arguments on appeal.[26]   Thus, this case is distinguishable from those minority-view cases on which the Bank relies because in those cases, contrary to here, the undisputed portion of the claims had been clearly identified by the creditor or stipulated.  *See DemirCo Holdings*, 2006 WL 1663237, at *3 (finding the parties had stipulated that the statutory threshold was met, even if all issues were resolved in favor of the debtor).[27]   It would be odd indeed, and

---

of a bona fide dispute if *either* the liability itself is in dispute or merely the amount is in dispute.  If nothing else, this signals that Congress continues to caution that holders of questionable claims ought not to be allowed to force companies into bankruptcy against their will."  *In re Henry S. Miller Comm'l, LLC*, 418 B.R. 912, 923 (Bankr. N.D. Tex. 2009).

[26]  On appeal, the Bank argues for the first time that even subtracting the combined value of the real property and the stock from the judgment, its claim remains well above the statutory threshold based on the value of the property as stated in the Reorganization Plan and the value of the stock as determined from calculations based on the Reorganization Plan but set forth for the first time only in the Bank's Reply Brief on appeal.  Arguments raised for the first time on appeal and dependent on facts not found or discussed by the Bankruptcy Court are not properly before the Court, especially where the party had every opportunity to raise the issue below.  *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331-32 (11th Cir. 2004).  And arguments raised for the first time in a reply brief are waived.  *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) (arguments raised for the first time in a reply brief are deemed waived); *Hall v. Coram Healthcare Corp.*, 157 F.3d 1286, 1290 (11th Cir.1998) (stating that "[a]rguments raised for the first time in a reply brief are not properly before th[e] court").

[27]  See also *In re Miller*, 489 B.R. 74, 82 (E.D. Tenn. 2013) (following *DemirCo* and stating "the existence of an unsecured, non-contingent, undisputed claim in an amount that exceeds [the statutory threshold] is admitted"); *In re Roselli*, 2013 WL 828304, at *9 (Bankr. W.D.N.C. 2013) (finding at worst, the petitioning creditor's undisputed claim exceeded the statutory threshold); *In re Mountain Country Partners, LLC*, 2012 WL 2394714 (Bankr. S.D.W.Va. 2012) (following *DemirCo* as the "better reasoned authority" and

contrary to the statutory language, to require the alleged debtor to establish the amount of the *creditor's undisputed* claim.   The Court finds no error in the Bankruptcy Court's conclusion on this record that there is a genuine and material bona fide dispute of fact as to the amount of the claim set forth by the Bank, rendering the Bank an ineligible petitioning creditor.[28]  For the same reasons, the Court also finds that the claims of Burk and Smith are subject to a bona fide dispute.[29]  Accordingly, the petition was correctly dismissed because it has not been shown that there are three eligible petitioning creditors with undisputed claims as to liability and amount and that exceed the statutory threshold

---

finding, despite some disputes, there was no dispute as to the principal investment $1.8 million).  *Cf. In re Tucker*, 2010 WL 4823917, at *6 (Bankr. N.D.W.Va. 2010) (finding no bona fide dispute where the discrepancy as to a figure exceeding $250,000 was less than $7,000 and thus, the lesser undisputed amount was not subject to a bona fide dispute and still exceeded the threshold).

[28]  Again, it bears emphasizing that the Bank did not attempt to proceed only on the undisputed portion of its claim, whatever that may be.

[29]  As with the Bank's claim, Turner has shown that the Smith and Burk claims have been at least partially satisfied in an unknown amount through the Chapter 11 proceedings based on the value of the stock they received, and thus, there is a dispute about how much, if any, of these judgments remains due and owing. (The Bank's Reply Brief arguably showing a basis for finding an undisputed portion as to these claims presents the issues too late, as previously noted.) Given this conclusion that there is a bona fide dispute as to the Burk and Smith claims, the Court is compelled to note its disagreement with the Bankruptcy Court's finding that the Burk and Smith claims have been completely satisfied.  Weltman's testimony and the Plan itself show that the Class 12 creditors received stock as full or complete satisfaction of their claims *against the Chapter 11 debtor*.  The Plan terms indicate that the claims of the Class 12 creditors, including Smith and Burk, were impaired, although their claims against the Chapter 11 debtor are considered completely satisfied. But there is no indication that the personal judgments against Turner were satisfied, and those judgments were entered prior to confirmation of the Plan but after the Bank knew its terms.  *See BankAtlantic v. Berliner*, 912 So. 2d 1260, 1263 (Fla. 4th DCA 2005) (explaining that the release of a debt prior to final judgment would release all guarantors but that after a debt has been reduced to final judgment, it merges and loses its pre-judgment identity such that all judgment debtors are jointly and severally liable, and release of one does not release the others).  Also, the Court agrees with the petitioning creditors that *Matey v. Pruitt*, 510 So. 2d 351 (Fla. 2d DCA 1987), is inapposite, standing only for the proposition that once the primary obligor's debt is fulfilled, there is nothing left to collect from a guarantor.  That principle does not carry the day here where Burk and Smith obtained personal final judgments against Turner *before* the Plan was confirmed, leaving the creditors free to pursue any remaining deficiency after credit is given for the stock distributed in the Chapter 11 proceeding.  Notwithstanding this disagreement with the Bankruptcy Court's reasoning, the Court agrees that the Burk and Smith claims, though they may or may not be completely satisfied based on the Reorganization Plan, are at least subject to a bona fide dispute as to amount and thus, like the Bank, they should have pursued only the deficiency as their undisputed claim.  The Court can affirm on any basis appearing in the record.  *See Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010); *In re Walker*, 532 F.3d 1304, 1308 (11th Cir. 2008).

amount in the aggregate.

Finally, the Bank argues that the Bankruptcy Court erred by failing to find special circumstances of fraud warranting relief of allowing the petition to proceed with less than three petitioning creditors, asserting a claim of fraud is shown through Turner's deposition testimony.  That deposition, however, was not admitted as an exhibit at the hearing before the Bankruptcy Court and was not considered in the Bankruptcy Court's decision.  Turner filed a motion to strike those portions of the Bank's initial brief and reply brief in which the Bank asserts fraud has been proven.  The Court agrees that fraud was not a basis for the Bankruptcy Court's decision and that no evidence of fraud was presented at the evidentiary hearing.  However, the Court will deny the motion to strike as moot because in reaching its decision on appeal, the Court has not considered those statements or arguments.  Also, because no evidence of fraud was presented at the hearing, the Bankruptcy Court did not err by not considering whether special circumstances of fraud existed to permit the petition to proceed on less than three petitioning creditors.

Accordingly, the Appellee's Motion to Strike (doc. 11) is **DENIED**, and the Order of the Bankruptcy Court dismissing the Chapter 7 proceeding is **AFFIRMED**.  The case is remanded to the Bankruptcy Court.

**DONE and ORDERED** on this 30th day of September, 2014.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**